STATE OF NORTH CAROLINA v. THEODIS WILLIAMS

No. 6912SC369

(Filed 27 August 1969)

**Criminal Law § 66—  in-court identification of defendant — prior police station identification — competency of evidence**

   Testimony by assault victim relating to her identification of defendant at a police station at a time when defendant was not in a line-up and did not have counsel present and had not waived counsel, *held* properly admitted, where (1) the victim had recognized defendant at the time of the assault and was able to identify him prior to arrest from a photograph obtained by the police with the aid of the victim's description, (2) the victim was well acquainted with defendant but knew him only by his nickname, and (3) the only purpose of the victim's presence at the station was to assure the officers that the person they had arrested was the person she had been endeavoring to tell them about.

APPEAL by defendant from *Canaday, J.,* 14 April 1969, Regular Criminal Session, CUMBERLAND County Superior Court.

The defendant was charged in a bill of indictment, proper in form, with murder of Johnny L. Williams on 30 July 1968, and in a second bill of indictment, proper in form, with a felonious assault on Mary McGhee on 30 July 1968.

Both charges were consolidated for purposes of trial. The defendant entered a plea of not guilty in each case.

The Solicitor on behalf of the State at the commencement of the trial announced that the State would not ask for a verdict of murder in the first degree, but for a verdict of murder in the second degree or manslaughter, as the evidence might warrant.

At the close of the evidence on behalf of the State, the defendant, through counsel, moved for a directed verdict of not guilty as to the felonious assault on Mary McGhee. This motion was allowed, and the trial court submitted the lesser offense of an assault with the intent to kill inflicting serious injuries.

The jury found the defendant guilty of murder in the second degree and guilty of an assault with intent to kill inflicting serious injuries. From judgments of imprisonment for a term of not less than 20 years and not more than 25 years in the murder case and two years in the assault case to run consecutively, the defendant appealed to this Court.

The evidence on behalf of the State tended to show that in the early morning hours of 30 July 1968 Johnny Lee Williams and Mary McGhee registered in the Plaza Hotel on Hillsboro Street in

the City of Fayetteville. They registered as Mr. & Mrs. Charles M. McGhee. Charles M. McGhee, who had been killed in Viet Nam, was the husband of Mary McGhee.

After registering they were assigned to Room No. 2.

The defendant was likewise a registered guest in this hotel. The defendant and Mary McGhee were acquainted and had known each other for several months.

Mary McGhee was employed as a go-go girl at the Friendly Tavern. On the evening of 29 July 1968 between the hours of 5:00 and 6:00 p.m., Mary had seen the defendant on Hillsboro Street in front of the Action (a poolroom). She said that he stopped her and in her words, "Well, he said something about getting together and making some money, or something like that, wanted me to work for him." She further testified that he suggested that she "get on the block", and she later explained that as meaning that the defendant desired her to work as a prostitute which she refused to do. She testified, "I told him he must be crazy, I not going on a block for no man."

It was after midnight and during the early morning hours of 30 July 1968 that Mary and Johnny Lee Williams registered in the Plaza Hotel, and were assigned to Room No. 2.

After being in the room several hours, Mary left the room and went out in the lobby where she engaged the night clerk in a conversation and also endeavored to get a taxicab. She was unsuccessful in getting a taxicab, and after visiting the ladies restroom which was located in the lobby, she returned to Room No. 2 where she had left Johnny Lee Williams asleep on the bed.

When she entered the room and started to get back in the bed, she discovered that Johnny Lee Williams was covered with blood. She screamed and then observed the defendant in the room. The defendant struck her with his fist and knocked her down. The defendant fell on top of her, and after a short struggle, she knew nothing. About 1:30 p.m. on 30 July 1968, a boy who was engaged to clean up the halls and bathrooms of the hotel accidentally pushed open the door to Room No. 2 and observed Mary lying on the floor and Johnny Lee Williams covered with blood on the bed. He notified the hotel manager who in turn notified the police authorities.

Johnny Lee Williams was dead as a result of multiple skull fractures and a crushed skull.

A broken board with blood on it was found in a nearby lot and

splinters from the board were found on the bed and floor in Room No. 2.

Mary was taken to the hospital where she remained unconscious for 17 days with a fractured skull.

On regaining consciousness Mary did not remember anything for several days. She did not recognize or know her mother or her brothers or sisters or any member of her family for several days after regaining consciousness.

Sometime in September 1968, Mary informed her mother and the police authorities that the man who had assaulted her in Room No. 2 in the Plaza Hotel was known to her by the name of Jabbo. She did not know what his actual name was, but had only known him by the name of Jabbo. She also described him as having a moustache and goatee and a very high hairdo.

With this description one of the detectives with the Fayetteville Police Department obtained a picture of the defendant which he took to the home of Mary, and Mary identified the picture as being the picture of Jabbo whom she knew and who had committed the assault on her. After the defendant was arrested, Mary went to the police station and identified the defendant as being the person she knew as Jabbo and who had been her assailant.

*Attorney General Robert Morgan by Assistant Attorney General George A. Goodwyn for the State.*

*Clark, Clark & Shaw by John G. Shaw for defendant appellant.*

CAMPBELL, J.

The defendant assigns as error that police officer, R. A. Studer and Lorraine Smith, the mother of Mary, were permitted to testify for the purpose of corroborating Mary that she had told each of them that she knew the person who had assaulted her and that she knew him only by his nickname, Jabbo. The defendant stresses that this purported corroborating testimony did not corroborate Mary.

When we look at the record, we find that none of this testimony was objected to, nor any exception taken thereto.

"The jurisdiction of the Supreme Court on appeal is limited to questions of law or legal inference, which, ordinarily, must be presented by objections duly entered and exceptions duly taken to the rulings of the lower court." 1 Strong, N.C. Index 2d, Appeal and Error, § 1, p. 103.

"The Supreme Court ordinarily will not consider questions not properly presented by objections duly made and exceptions duly entered, and assignments of error properly set out, though it may do so in exceptional instances in the exercise of its supervisory jurisdiction. . . .

. . . Exceptions which appear nowhere in the record except under the purported assignments of error will not be considered. . . ." 1 Strong, N.C. Index 2d, Appeal and Error, § 24, p. 145.

The defendant next assigns as error that the trial court permitted Mary to testify that she identified the defendant at the police station by looking through a glass into another room at a time when the defendant was not in a lineup and did not have counsel present and had not waived counsel. The defendant again fails to have any objections or exceptions in the record and, therefore, the question which the defendant seeks to raise is not properly presented. Nevertheless, there was no improper identification in the instant case. Mary was well acquainted with the defendant prior to the alleged assault. She did not know the full name of the defendant and only knew him by his nickname of Jabbo. She had known him for several months and was well acquainted with him. She was taken to the police station merely for the purpose of informing the police officers as to whether or not the person they had in custody was the person she had been trying to identify to them. As a result of the severe injuries which she had received, she had had a case of amnesia which had lasted over a period of several weeks. Both the identification of the picture of the defendant and the identification of the defendant himself at the police station were merely for the purpose of assuring the police officers that the person they had apprehended and arrested and accused of the offense was the person she had been endeavoring to tell them about. The defendant seeks to rely upon the cases of *United States v. Wade*, 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; *Gilbert v. California*, 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951; *Stovall v. Denno*, 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967; and *State v. Wright*, 274 N.C. 84, 161 S.E. 2d 581, in support of his argument.

As stated by Brock, J., in *State v. Hunsucker*, 3 N.C. App. 281, 164 S.E. 2d 507, (certiorari denied, 31 January 1969, 275 N.C. 138):

"The rationale underlying the decisions in the cases relied upon by defendant is that unfairness in the 'lineup' or other arranged identification process may arise by exhibiting the accused so as to suggest his identity to the witness and thereby obtain a positive identification from the witness which the witness will

not later admit was indefinite or mistaken; and that the absence of counsel at this stage of the proceeding would prevent any effective cross-examination of the witness relative to the identification process. . . ."

In the case *sub judice* there was no effort being made to have Mary identify the defendant. She already knew the defendant and the only purpose for her going to the jail was to assure the police officers that the person whom she knew and whom she had attempted to identify for their benefit was the person they had arrested.

Despite the failure of objections and exceptions in the record, we have nevertheless reviewed all of the testimony in this case, and it was ample and sufficient to submit the cases to the jury. The jury, as the trier of the facts, has found the facts against the defendant. The charge of the trial court was not excepted to and no errors are claimed in that regard. The defendant has had a fair and impartial trial free of prejudicial error.

No error.

BROCK and MORRIS, JJ., concur.